# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| United States of America, | ) | |
|---|---|---|
| | ) | **ORDER DENYING DEFENDANT'S** |
| Plaintiff, | ) | **MOTION TO SUPPRESS** |
| | ) | |
| vs. | ) | |
| | ) | Case No. 1:19-cr-161 |
| Michael K. Sinnawi, | ) | |
| | ) | |
| Defendant. | ) | |

Before the Court is the Defendant's amended motion to suppress filed on December 10, 2019. See Doc. No. 72. The Government filed a response in opposition to the motion on December 23, 2019. See Doc. No. 82. A hearing on the motion was held on January 15, 2020. The Government filed a post-hearing brief on January 22, 2020. See Doc. No. 88. For the reasons set forth below, the motion is denied.

### I.     BACKGROUND

On August 14, 2019, DEA Special Agent Jeffrey Buckles applied for a search warrant for room 202 at the Country Inn & Suites in Bismarck, North Dakota. See Doc. No. 82-1. In his affidavit in support of the search warrant, Agent Buckles stated as follows:

> 4. On 08-13-2019 Your Affiant received information from the Country Inn Suites located at 3205 North 14th Street in Bismarck, Burleigh County, North Dakota, advising that two individuals had been staying at the hotel in room 202 since 08-04-2019 and renewing their room rental on the internet, sometimes daily.
>
> 5. Your Affiant knows from training and experience that it is common for drug traffickers to renew their room on a sometimes daily basis as they are awaiting money from customers, or have not sold all of their product yet, or sometimes both.

1

6. The two individuals registered with the hotel as staying in room 202 are Michael SINNAWI . . . and Antonio HERFY . . . both from Michigan. The two men told the hotel staff they are in Bismarck opening a "tobacco or vape" shop. The hotel staff advised that the two men stay at the hotel most days and sometimes do not come out of their room until the afternoon hours.

7. SINNAWI has criminal history to include 2004: Malicious Destruction of Personal Property/Damage to Property . . . 2005: Assault with Dangerous Weapon . . . 2005: Receiving or Concealing Stolen Property . . . 2005: Larceny . . . 2006: Malicious Destruction of Personal Property . . . 2006: Assault . . . 2007: Malicious Destruction of Personal Property . . . 2008: Larceny . . . 2011: Domestic Violence . . . .

8. HERFY has criminal history to include 2012: Receiving and Concealing Stolen Property . . . 2016: Dangerous Drugs . . . .

9. According to the CLEAR Law Enforcement Database, SINNAWI has shared address history with Thaer GARMOO in Oak Park, Michigan. Thaer GARMOO is related to Mario GARMOO, who has a current federal case, District of North Dakota, for Conspiracy to Possess with Intent to Distribute Oxycodone, and Possession with Intent to Distribute Oxycodone, following an arrest in March 2019 where he was found to be in possession of approximately 100 Oxycodone Hydrochloride pills. During a post arrest interview with Your Affiant, Mario GARMOO advised he is from Detroit, Michigan, and sells pills in/around the Fort Berthold Indian Reservation. According to Mario GARMOO, Thaer GARMOO goes by "NUTBALL" and he has come to North Dakota in the past to sell pills alongside Mario GARMOO. Several text messages were observed on GARMOO's cellular phone which show the GARMOO's working together to sell pills and marijuana.

10. Your Affiant has executed search warrants at the County Inn Suites in Bismarck on two separate occasions and arrested two individuals from Michigan, both who had large amounts of Oxycodone Hydrochloride pills. Individuals from Michigan have been coming to North Dakota for several years to sell pills as they can be obtained cheaply in cities such as Detroit and later re-sold in North Dakota for profit. Your Affiant has interviewed several drug traffickers from Michigan who have advised they can obtain Oxycodone Hydrochloride pills for $20.00-$25.00 per pill and later re-sell the pills for $60.00-$75.00 in Bismarck or on the Fort Berthold Indian Reservation.

11. Your Affiant conducted surveillance in the area of the Country Inn Suites on 08-13-2019 and observed a male on the Northside of the parking lot meeting with various individuals. On one occasion, the male met with a female (later identified as Emily DAVIS) who exited a grey in color Ford Focus . . . and went into the hotel with him while the driver of the vehicle remained inside the vehicle. A short time later, the female was observed exiting the hotel and getting back in the vehicle and leaving. A short time later, a different vehicle, a Chevrolet Cobalt . . . was observed driving suspiciously in the

area of the Country Inn Suites, doing multiple laps in the parking lot and driving erratically. A traffic stop was conducted of the Chevrolet Cobalt by the Bismarck Police Department and following a search, several marijuana smoking devices were located. Emily DAVIS was a passenger of the Chevrolet Cobalt vehicle, indicating she had switched vehicles from the Ford Focus to the Chevrolet Cobalt. DAVIS denied ever being at the Country Inn Suites despite repeated questioning. Another individual in the vehicle, Ty THOMAS, who was the driver, indicated he had taken DAVIS to the Country Inn Suites to meet with "her guy". THOMAS did not elaborate on what he meant by saying "her guy".

12. Your Affiant knows Emily DAVIS to be involved with trafficking pills and heroin. DAVIS is also known to the agents on the Fort Berthold Indian Reservation as being a drug trafficker operating in that area as well. Your Affiant arrested Kevon SAVAGE in April 2019 and during an interview, SAVAGE advised Your Affiant he had sold DAVIS approximately 350 Oxycodone Hydrochloride pills historically.

13. Following agents observing DAVIS meeting the unidentified male, Your Affiant followed up with hotel staff, who advised the male had been observed in surveillance video coming from and going to room 202, the same room being rented by SINNAWI and HERFY. The male has not been identified.

14. Hotel staff also provided Your Affiant with [a] North Dakota license plate . . . which is registered to Devin YELLOW WOLF. Hotel staff advised YELLOW WOLF's vehicle had visited the hotel and a male went to room 202, coming out a short time later and leaving. YELLOW WOLF is known to agents on the Fort Berthold Indian Reservation as hosting individuals from Michigan at his trailer in Mandaree, North Dakota. The males from Michigan sell pills out of YELLOW WOLF's trailer. A federal search warrant has previously been conducted on YELLOW WOLF's trailer and he was found to be in possession of controlled substances and US Currency. YELLOW WOLF also has a 2014 conviction for Possession of Oxycodone . . . .

See Doc. No. 82-1.

Based on Agent Buckles' affidavit, a North Dakota state district court judge issued a search warrant for room 202 at the Country Inn & Suites. The search warrant was executed and law enforcement officers allegedly found approximately 450 oxycodone pills and $45,000 in United States currency. See Doc. No. 25. Sinnawi was charged with conspiracy to distribute and possess with intent to distribute oxycodone, and possession with intent to distribute oxycodone. Sinnawi now seeks to suppress the evidence found during the search of room 202.

3

## II. LEGAL DISCUSSION

The Fourth Amendment provides the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV; see also United States v. Jones, 269 F.3d 919, 924 (8th Cir. 2001). The United States Supreme Court has made it clear the Fourth Amendment establishes a "reasonableness" standard. "The touchstone of our analysis under the Fourth Amendment is always 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.'" Pennsylvania v. Mimms, 434 U.S. 106, 108-09 (1977) (quoting Terry v. Ohio, 392 U.S. 1, 19 (1968)).

### A. PROBABLE CAUSE

Sinnawi contends there was an insufficient basis for the state court judge to find probable cause to issue the search warrant for his hotel room. The Government contends probable cause existed for issuance of the search warrant.

The Fourth Amendment requires that law enforcement officers secure a warrant based upon a finding of probable cause by a neutral and detached magistrate before conducting a search. Katz v. United States, 389 U.S. 347, 357 (1967); United States v. Alberts, 721 F.2d 636, 638 (8th Cir. 1983). A warrant must be supported by probable cause, which "exists if the warrant application and affidavit describe circumstances showing a fair probability that contraband or evidence of a crime will be found in a particular place . . . ." United States v. Keele, 589 F.3d 940, 943 (8th Cir. 2009) (quoting United States v. Montes-Medina, 570 F.3d 1052, 1059 (8th Cir. 2009)). "Probable cause is 'a fluid concept – turning on the assessment of

4

probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules.'" Walden v. Carmack, 156 F.3d 861, 870 (8th Cir. 1998) (quoting Illinois v. Gates, 462 U.S. 213, 232 (1983)). The Eighth Circuit Court of Appeals has explained:

> The court issuing a search warrant must "make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."

United States v. Carter, 413 F.3d 712, 714 (8th Cir. 2005) (quoting Gates, 462 U.S. at 238).

Probable cause can be based on a law enforcement officer's observations. United States v. Terry, 305 F.3d 818, 822-23 (8th Cir. 2002). More important, after a judicial officer has issued a search warrant upon a finding of probable cause, "that finding deserves great deference." Walden, 156 F.3d at 870; see also United States v. Grant, 490 F.3d 627, 631 (8th Cir. 2007) ("Whether probable cause to issue a search warrant has been established is determined by considering the totality of the circumstances, and resolution of the question by an issuing judge should be paid great deference by reviewing courts") (internal quotations omitted). The affidavit in support of the search warrant application is "judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." United States v. Daigle, No. 18-2603, 2020 WL 201722, at *3 (8th Cir. Jan. 14, 2020).

Where the probable cause for issuance of a warrant is based on information supplied by an informant, the core question in assessing probable cause is whether the information is reliable. United States v. O'Dell, 766 F.3d 870, 874 (8th Cir. 2014). There are several ways to establish the reliability of a source and the source's information. One manner is independent corroboration of information provided by the source. United States v. Keys, 721 F.3d 512, 518

5

(8th Cir. 2013). When some information provided by a source, even an anonymous source, is corroborated, then it may be inferred that uncorroborated information is reliable. Id.; United States v. Buchanan, 574 F.3d 554, 562 (8th Cir. 2009); United States v. LaMorie, 100 F.3d 547, 553 (8th Cir. 1996). This includes corroboration of minor innocent details. Buchanan, 574 F.3d at 563.

Information from an informant that is based upon first-hand knowledge is given greater weight. United States v. Robertson, 39 F.3d 891, 893 (8th Cir. 1994); United States v. Briscoe, 574 F.2d 406, 409 (8th Cir. 1978). A face-to-face meeting with the informant may also enhance reliability of information as the officer may assess the credibility of the informant. Robertson, 39 F.3d at 893. Information may be sufficiently reliable to support a probable cause finding if the person supplying the information has a track record of supplying reliable information or if it is corroborated by independent evidence. Id. If information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable and that other information the informant provides, though uncorroborated, is also reliable. United States v. Edmiston, 46 F.3d 786, 789 (8th Cir. 1995).

Known informants are given more credence than anonymous or confidential informants because, in part, they can be held responsible if the allegations turn out to be fabricated. United States v. Solomon, 432 F.3d 824, 827-28 (8th Cir. 2005) (citing Florida v. J.L., 529 U.S. 266, 270 (2000)); see also United States v. Stevens, 530 F.3d 714, 718-19 (8th Cir. 2008) (known, identified informant who provides first-person account of information is entitled to greater reliability); LaMorie, 100 F.3d at 553 (corroboration of the information by independent

investigation is more important in a case involving a confidential or anonymous informant than with a known individual).

The affidavit in support of the application for a search warrant of room 202 reveals that Agent Buckles was informed by hotel staff that two individuals had been staying in room 202 since August 4, 2019, a period of nine days, and they had been renewing their room rental on the internet, sometimes daily. Hotel staff further advised that the two occupants of room 202 "stay at the hotel most days and sometimes do not come out of their room until the afternoon hours." Based on his training and experience, Agent Buckles recognized that "it is common for drug traffickers to renew their room on a sometimes daily basis as they are awaiting money from customers, or have not sold all of their product yet, or sometimes both." Further, the source of information was not an anonymous tipster, but was identified as hotel staff. A hotel employee, unlike the anonymous tipster, can be held responsible in the event that the allegations turn out to be fabricated. See Solomon, 432 F.3d at 827-28. Thus, the information is entitled to a greater degree of reliability. See Stevens, 530 F.3d at 718-19 (known, identified informant who provides first-person account of information is entitled to greater reliability); LaMorie, 100 F.3d at 553 (corroboration of the information by independent investigation is more important in a case involving a confidential or anonymous informant than with a known individual).

Agent Buckles also explained how the two registered guests' connection to the State of Michigan was significant to him, stating, "Individuals from Michigan have been coming to North Dakota for several years to sell pills as they can be obtained cheaply in cities such as Detroit and later re-sold in North Dakota for profit." The affidavit also provided that Agent Buckles interviewed several drug traffickers from Michigan who advised him they could obtain

7

oxycodone pills for $20-25 per pill and resell them in Bismarck or on the Fort Berthold Indian Reservation for $60-75 per pill. Accordingly, the state court judge could have drawn the reasonable inference that Michigan was a "source state" for narcotics, in particular, oxycodone pills.

Agent Buckles also explained how the activity at this particular hotel and by these specific occupants was significant to him. He stated he previously executed two search warrants at the Country Inn & Suites which resulted in the seizure of large quantities of oxycodone pills and the arrests of individuals from Michigan. He identified the occupants' criminal history, including Antonio Herfy's two prior drug related incidents out of Michigan: (1) Delivery/Manufacturing Marijuana, and (2) Dangerous Drugs. See Doc. No. 82-1, ¶ 8. This prior history was relevant to the probable cause determination. See United States v. McIntyre, 646 F.3d 1107, 1115 (8th Cir. 2011) (prior drug arrests); United States v. Reinholz, 245 F.3d 765, 776 (8th Cir. 2001) (prior drug record).

In addition, the affidavit contained Agent Buckles' and other law enforcement officers' observations corroborating these initial indicators of drug trafficking, specifically by connecting persons occupying room 202 with known users and distributors of oxycodone pills. One such individual was Emily Davis. Agent Buckles noted in his affidavit that he knew Davis to be involved with trafficking oxycodone pills and heroin. In April 2019, he arrested an individual, Kevon Savage, who stated he had sold approximately 350 oxycodone pills to Davis. The affidavit also provides that agents on the Fort Berthold Indian Reservation know Davis to be a drug trafficker operating in that area as well. On August 13, 2019, Agent Buckles observed a male, later identified by hotel staff as someone "coming from and going to room 202," meeting

8

with Davis in the parking lot of the hotel. The affidavit reveals that the male and Davis entered the hotel, while the driver of the vehicle that Davis arrived in remained inside the vehicle. After a short period of time, Davis exited the hotel and returned to the vehicle. Soon after, Agent Buckles observed a different vehicle driving suspiciously near the hotel in that it was "doing multiple laps in the parking lot and driving erratically." Law enforcement officers initiated a traffic stop of the vehicle, resulting in a search and the location of several marijuana smoking devices. Davis was a passenger in the stopped vehicle and told officers she had switched vehicles; however, she denied ever being at the Country Inn & Suites, despite repeated questioning. The driver of the vehicle, Ty Thomas, told officers he had taken Davis to the Country Inn & Suites to meet with "her guy."

Agent Buckles' affidavit provided more than sufficient information from which the state court judge could reasonably infer and conclude that Emily Davis was at the hotel to obtain opiate pills from the occupants of room 202. First, her brief stay during the first stop and return shortly thereafter was indicative of drug trafficking activity. United States v. Hawkins, 215 F.3d 858, 859 (8th Cir. 2000) (staying at residence short time is activity consistent with drug dealing). Second, the erratic and suspicious driving behavior upon her return was suggestive that drug trafficking was afoot. See United States v. Nolen, 536 F.3d 834, 841 (8th Cir. 2008). Finally, Davis' blatant lie to officers about her prior encounter at the hotel was relevant to the judge's assessment of her activity. See United States v. Ameling, 328 F.3d 443, 448-49 (8th Cir. 2003) (false statements and inconsistent stories to officers among factors relied upon to find probable cause).

Additionally, the affidavit provides that hotel staff informed Agent Buckles that Devin Yellow Wolf's vehicle was at the hotel, and a male from that vehicle went into room 202, exiting a short time later. According to the affidavit, Yellow Wolf has a 2014 conviction for possession of oxycodone in state district court. Further, agents on the Fort Berthold Indian Reservation had direct knowledge that Yellow Wolf allowed drug traffickers from Michigan to sell oxycodone pills out of his trailer. In fact, law enforcement officers had previously executed a federal search warrant on the trailer, finding controlled substances and United States currency. Similar to Davis' activity, the state court judge could reasonably infer this conduct was indicative of drug trafficking activity. See Hawkins, 215 F.3d at 859; United States v. Kruse, 603 Fed. Appx. 512, 515 (8th Cir. 2015) (vehicles belonging to known drug users outside defendant's house supported probable cause finding).

Based on the totality of the circumstances, the Court finds there was more than a sufficient basis for the state court judge to find probable cause for the issuance of the search warrant for room 202 at the Country Inn & Suites.

### B. **GOOD FAITH EXCEPTION**

The Government also contends that even if probable cause did not exist for the issuance of the search warrant the search should be upheld because law enforcement officers acted in good faith and reasonably relied on the search warrant. The United States Supreme Court outlined a "good faith exception" to the exclusionary rule in *United States v. Leon*, 468 U.S. 897 (1984). The exclusionary rule "operates as 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect [against officer misconduct], rather than

a personal constitutional right of the party aggrieved.'" Leon, 468 U.S. at 906 (citing United States v. Calandra, 414 U.S. 338, 348 (1974)). Under the good faith exception, if the affidavit for a search warrant lacks probable cause, evidence obtained in the search should not be suppressed if the officers relied in good faith on a search warrant issued by a neutral and detached magistrate, and their reliance on the warrant was objectively reasonable. United States v. Farlee, 757 F.3d 810, 819 (8th Cir. 2014); see also United States v. Koons, 300 F.3d 985, 990-91 (8th Cir. 2002) ("[w]hen a search warrant is not supported by probable cause, any evidence obtained as a result is generally inadmissible, but there is an exception for evidence obtained by an officer who relied in objective good faith on a search warrant") (citing Mapp v. Ohio, 367 U.S. 643, 655-57 (1961); Leon, 468 U.S. at 922). There are four situations in which law enforcement could not reasonably rely in good faith on a warrant issued by a judge or magistrate:

(1) If the issuing magistrate or judge was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth;

(2) The issuing official wholly abandoned his judicial role;

(3) The warrant was based on an affidavit that was so lacking in indicia of probable cause that an officer's belief in its existence is entirely unreasonable; and

(4) The warrant is so facially deficient that officers executing the warrant cannot reasonably presume the warrant to be valid.

Leon, 468 U.S. at 923.

There is nothing in the record before the Court which, in any manner, reveals that Agent Buckles, or any other law enforcement officers involved in the search, did not act in good faith in obtaining and executing the search warrant. The Court has already determined the affidavit submitted by Agent Buckles was sufficient to establish probable cause. Agent Buckles' affidavit

11

detailed the information supplied, his personal observations of activity at the hotel as connected to room 202, historical information about the occupants, and what all of this information led him to conclude based on his experience, education, and training. As a result, Agent Buckles could reasonably rely upon the judge's determination of probable cause. Further, the record is devoid of any evidence that Agent Buckles offered misleading testimony in his affidavit, that the state court judge abandoned his or her judicial role, or that the search warrant itself was facially deficient in any way. The Court finds the actions of the law enforcement officers were at all times conducted in good faith reliance on the search warrant approved by the state court judge. See United States v. Carter, 413 F.3d 712, 715 (8th Cir. 2005) (refusing to suppress evidence where officers relied in objective good faith on a search warrant). The suppression of any evidence seized in relation to the search warrant issued is unwarranted.

### III. CONCLUSION

The Court has carefully reviewed the entire record, the parties' arguments, and relevant case law. The Court finds the totality of the circumstances show probable cause existed to support the issuance of the search warrant and that officers conducted the search in good faith reliance on the search warrant. Accordingly, the Defendant's motion to suppress (Doc. No. 72) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 10th day of February, 2020.

                                             */s/ Daniel L. Hovland*
                                             Daniel L. Hovland, District Judge
                                             United States District Court