```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NORTH DAKOTA


United States of America,    )
                             )
            Plaintiff,       )
                             )
     vs.                     )    File No.   1:19-cr-161
                             )               1:19-mj-286
Michael K. Sinnawi,          )
                             )
            Defendant.       )
```

TRANSCRIPT OF DIGITAL RECORDING
OF DETENTION HEARING

Taken at
United States Courthouse
Bismarck, North Dakota
August 29, 2019

BEFORE THE HONORABLE CLARE R. HOCHHALTER
-- UNITED STATES DISTRICT MAGISTRATE COURT JUDGE --

APPEARANCES

    MR. RICK LEE VOLK
    U.S. Attorney's Office
    220 E. Rosser Ave
    P. O. Box 699
    Bismarck, North Dakota 58502-0699

                              FOR THE UNITED STATES

- - - - - - - - - -

    MR. PATRICK W. WATERS
    Heartland Law Office
    521 E. Main Ave., Suite 350
    Bismarck, North Dakota 58501

                              FOR THE DEFENDANT
                              MICHAEL K. SINNAWI

- - - - - - - - - -

Certificate of Transcriber - Page 14

- - - - - - - - - -

1          (The above-entitled matter came before the Court, The
2   Honorable Clare R. Hochhalter, United States District Court
3   Magistrate Judge, presiding, commencing at 1:30 p.m., Thursday,
4   August 29, 2019, in the United States Courthouse, Bismarck,
5   North Dakota.  The following proceedings were had and made of
6   record in open court by digital recording with the defendant
7   present.)
8                    - - - - - - - - - - -
9          THE COURT:  We're on the record in United States of
10  America versus Michael Sinnawi, Criminal Case Number
11  1:19-mj-286.  Counsel, if you would note your appearances for
12  the record, please.
13         MR. VOLK:  Rick Volk on behalf of the United States.
14         MR. WATERS:  Patrick Waters on behalf of Michael
15  Sinnawi.
16         THE COURT:  And I have it scheduled for a detention
17  hearing.  Are the parties prepared to go forward?  Mr. Waters?
18         MR. WATERS:  Yes, Your Honor.
19         THE COURT:  Mr. Volk?
20         MR. VOLK:  We are, Your Honor.
21         THE COURT:  Okay.  You can proceed.
22         MR. VOLK:  Your Honor, the basis for detention for
23  the United States is contained in the pretrial services' report
24  that's been provided to the Court, as well as the Complaint and
25  Affidavit that are on record -- or in the record in the -- in

1  the Court's file, and so I simply have argument to support --
2  to any additional evidence to present.
3            With reference to the risk of flight and risk of
4  danger here, we're dealing with an individual who has
5  absolutely no ties to the state of North Dakota absent the
6  alleged criminal conduct.  And as the Court can see from the
7  Affidavit here, he was the registered guest at the Country Inn
8  and Suites beginning on April -- I'm sorry, not April,
9  August 4th of 2019, up until the execution of a search warrant
10 on August 14th, so a period of 10 days.
11           That particular location -- and when the search
12 warrant was executed, they found 450 oxycodone 30-milligram
13 pills and four -- approximately $45,000 in cash, and also
14 seized cellular telephones, which as the Court can see from the
15 Affidavit, indicate that this particular defendant was
16 directing the activities of his father in distributing
17 oxycodone pills to other individuals who were coming to the
18 hotel to secure them from that group.  So the evidence against
19 Mr. Sinnawi is -- is very strong, substantial towards his
20 guilt; couple that with the lack of ties to the state of North
21 Dakota.
22           He does have a history of violence in his -- in his
23 past.  He does have a conviction for assault with a weapon.
24 And, quite honestly, he has a fairly repetitive criminal
25 history, some of which isn't necessarily the worst type of

1  activities.  Some is just driving -- driving offenses, but he
2  has criminal history dating back to his juvenile days at age 16
3  that does include a variety of offenses, to include damage to
4  property, theft from motor vehicles, assault with a dangerous
5  weapon, and it -- and, quite honestly, Your Honor, it just is
6  repetitive arrests, some dismissed, but many convictions
7  intermingled in there.
8         And it appears he's been -- he has committed crimes
9  while he's been on probation in the past, so Court
10 interventions have not really modified his behavior.
11        The other concern that I have is -- is that he claims
12 he does not know where -- the current whereabouts of his
13 father, who is also a charged defendant in this case and was
14 with them at the time of the arrest -- or at the hotel.  He was
15 obviously subsequently released, but he claims he doesn't know
16 where he is, and he's a charged defendant in this case, and he
17 was directing his father's activities per the -- per the
18 Affidavit.
19        Given all of that, Your Honor, and the nature of the
20 conduct, Your Honor, we do believe that Mr. Sinnawi presents a
21 risk of flight and a risk -- risk of danger to the community
22 should he be released, and we would ask that the Court issue an
23 order of detention on those grounds.
24        THE COURT:  Mr. Volk, the charge in the Complaint is
25 under Title 21, an offense that has a maximum term of

1  imprisonment of more than 10 years?

2  MR. VOLK:  Yes, it does, and so it does carry that
3  presumption for detention.

4  THE COURT:  Under 3142(e)(3) --

5  MR. VOLK:  Yes.

6  THE COURT:  -- presumption of detention.  Mr. Waters,
7  do you see that differently at all?

8  MR. WATERS:  I don't see that differently.  Certainly
9  I would disagree with some of the characterizations made by the
10 government, if the Court would allow me.

11 THE COURT:  Understand, and, yes.  Do you have any
12 witness testimony, or --

13 MR. WATERS:  I don't have any witness, Your Honor.
14 I'll simply argue.

15 THE COURT:  Argument.  Okay.

16 MR. WATERS:  Thank you.  Well, Judge, just to begin
17 with, I will submit that as far as community ties in North
18 Dakota, there aren't any.  But what I would take issue with is
19 that he lacks familial ties, that he lacks residential ties and
20 employment ties, property ties.

21 His entire family is in Michigan.  That is everybody.
22 His sister -- I've been in contact with his family about three
23 or four times just before today.  They have been all over me to
24 make sure that I know that I can communicate to the Court that
25 they will be responsible to ensuring that he appears for future

6

1  hearings in this matter.  To an extent --
2          THE COURT:  These are the family members that
3  pretrial services was in touch with and are mentioned in the
4  Bond Report.
5          MR. WATERS:  The conversations that I had with family
6  members prior to should have been reflected in the pretrial
7  report, and from what I saw, I think the -- the report is
8  accurate, as far as what I was told.
9          THE COURT:  Okay.  And I have that report, as well as
10 the Complaint and Affidavit and any of the other files and
11 records available.
12         MR. WATERS:  Oh, great.  So what that leaves the
13 Court with is to decide, to what extent is Mr. Sinnawi actually
14 a risk to fail to appear, and to what extent is Mr. Sinnawi a
15 risk to public safety?
16         As it relates to his failure to appear, I would
17 submit to the Court that in review of his criminal record, I
18 see absolutely no indication of him failing to appear for --
19 for court dates.  And as this Court is aware, past behavior is
20 a good indication -- not an only indication, but a good
21 indication of what will happen in the future.
22         Additionally, I would note that his last criminal
23 activity prior to being arrested on the present charges was in
24 2015.  I'm not aware of whether he's offended while on
25 probation or not.  I don't have that information, so I can't

1  speak to that.

2  But what I can speak to is that my review of his
3  record indicates that he has had one prior conviction for
4  violent behavior.  That was at the age of 18 and is an assault
5  with dangerous weapons.  He was 18, and we don't know what the
6  facts are surrounding that.  We only know that that's what the
7  conviction was.

8  The remainder of his crimes, with the exception of a
9  larceny, which is the case that I'd talked about to the Court,
10 the 2015 conviction, seemed to be lower-level crimes, the
11 majority of which are operating a vehicle without a license.
12 He has -- he has at least eight prior convictions for that
13 since 2005.

14 I'm not making light of his criminal history, but
15 what I am trying to do is frame this for the Court's attention
16 in that this is not someone that -- while there may be a
17 presumption of detention, this is not someone, based on his
18 criminal record, that this Court can find makes him a risk to
19 fail to appear.

20 In fact, on his case in Chicago that was dismissed,
21 that was a manufacture, deliver charge of cannabis.  He
22 reported and his family also told me the same, that he had
23 multiple hearings that he was supposed to go to in Chicago that
24 he, in fact, showed up for.  I doubt the state would've
25 dismissed the charge if he had failed to live up to his

1   obligations.
2          So what that leaves us with is, what danger to the
3   community is Mr. Sinnawi?  Well, a review of his prior criminal
4   history doesn't show any prior drug-related offenses.  It
5   certainly doesn't show any prior convictions for delivery or
6   even possession.
7          There were three people involved in this
8   investigation, one of which was his father, and the other was
9   his cousin, so we have three people here that could have been
10  actors involved.  That should give the Court some pause as to
11  the strength of the evidence against the defendant.
12         And, finally, with respect to the text messages, we
13  have no way of knowing whether Mr. Sinnawi was the individual
14  who sent those text messages.  We simply know that it came from
15  a phone that the government is going to allege was his.
16         So for all these reasons, while there may be a
17  presumption of detention, given the prior history that the
18  defendant has, the lack of drug-related offenses, the fact that
19  there were three people involved here, and specifically the
20  lack of failing to appear for court dates -- this is not a
21  state court issue.
22         This is a federal case.  The federal government has
23  way more resources than a state court does in keeping an eye on
24  defendants.  That's what pretrial service program is.  And if
25  the Court deems that detaining Mr. Sinnawi on these facts --

1  that's a little concerning simply because he does have the
2  presumption of innocence on this case.
3         And so for those reasons, I would request that the
4  Court set conditions of pretrial release to the extent it's
5  able that will satisfy the Court's concern about appearing for
6  future court dates and also the minimal concern that the Court
7  should have regarding safety of the community.  Thank you.
8         THE COURT:  Is Christine Sinnawi a family member?
9         MR. WATERS:  That's his sister, yes, and I've spoken
10 with her about five times.
11        THE COURT:  Okay.  The same Christine Sinnawi who's
12 mentioned in the Affidavit attached to the Complaint who wiped
13 the phone?
14        MR. WATERS:  I can't speak to that because I haven't
15 heard that evidence, but that certainly is in the Affidavit.
16        THE COURT:  Mr. Volk, anything else?
17        MR. VOLK:  That is one and the same, Your Honor.
18        Your Honor, the only other thing that I would add is,
19 based upon my experience with the supervision in the Eastern
20 District of Michigan, I can advise the Court that the
21 likelihood that that supervision is going to be substantial is
22 -- is probably minimal.  It's certainly not going to be the
23 same supervision that may -- may result here in the District of
24 North Dakota.
25        I've had multiple issues with individuals who have

1  been living in the Eastern District of Michigan who simply
2  don't show up.  We've had numerous issues with continued use of
3  substances while they've been on supervision, and the ability
4  to get them back or do anything at that point has been very
5  difficult, to say the least.
6          The fact of the matter is, Mr. Sinnawi can do
7  practically anything if he returns back to the state of
8  Michigan, and we will likely not have a whole lot of
9  supervision going on, Your Honor.
10         THE COURT:  Well, as we discussed, there is, under
11 3142(e)(3), a presumption of detention under the circumstances,
12 given the offense that's charged, but it is rebuttable.
13         And under the circumstances, 3142(g) requires me, as
14 counsel knows, to look at certain factors; among those, the
15 nature and circumstances of the offense that's charged.
16         The weight of the evidence against the defendant,
17 notwithstanding the fact that defendant is presumed innocent,
18 one of the factors to be considered, and it's nondiscretionary,
19 is the weight of the evidence against the defendant.
20         The history and characteristics of the person,
21 including a person's character, family ties, which as Mr. Volk
22 points out don't exist in this district, in this community.
23         Employment, I saw nothing to suggest that defendant
24 is employed.  I understand that he was at one point employed,
25 but is no longer.

1                Financial resources, which again, this defendant does
2    not have substantial resources to provide for himself.  And I
3    understand that there are family members who would be willing
4    to provide some support, but I'm also concerned about the
5    family members who -- it seems that the offense conduct itself
6    involves a number of family members; community ties, of which
7    there are none in this district.
8                Past conduct, that can include criminal history.
9    Here, as Mr. Waters points out, I think it's not the worst
10   we've seen, but there is a pattern of it over time.  There are
11   multiple pages attached to the Bond Report suggesting a lack of
12   defendant's ability to conform himself with applicable laws.
13               And so based on those facts, as well as the
14   conclusion of the pretrial services' recommendation, which was
15   that defendant be detained, it's going to be the order of the
16   Court that -- that defendant has not rebutted the presumption
17   of detention under the circumstances and, therefore, defendant
18   should be detained as both a flight risk and danger to the
19   community and will remain in custody of the attorney general,
20   these U.S. marshals pending further proceedings and orders in
21   this case.
22               Anything else, Mr. Volk?
23               MR. VOLK:  No, Your Honor.
24               THE COURT:  Mr. Waters?
25               MR. WATERS:  Not at this time, Your Honor.

13

1                THE COURT:  Thank you.  Court is adjourned.
2                (Proceedings concluded at 1:45 p.m., the same day.)
3                         - - - - - - - - - -
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

CERTIFICATE

State of North Dakota   )
                        ) ss
County of Burleigh      )


    I, Sandra E. Ehrmantraut, do hereby certify that the foregoing and attached typewritten pages contain an accurate transcription, to the best of my ability, of said digital recording made at the time and place herein indicated.

    Dated:  December 3, 2020


                                              /s/ Sandra E. Ehrmantraut